## Gilbert H. Hoxie, Appellee, v. Abraham Pfaelzer, Appellant.

## Gen. No. 16,085.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside on review as against the evidence unless clearly and manifestly against its weight.

2. TRIAL—*when incident will not reverse.* The fact that the jury's attention is directed to the nationality of the defeated party, as being that of a Hebrew will not result in reversal.

3. JUDICIAL NOTICE—*of what not taken.* The courts will not take judicial notice that there is an existing prejudice against the Hebrew race.

4. INSTRUCTIONS—*when not erroneous.* An instruction that tells the jury that if they find "*from the evidence*" a certain fact, is not faulty because the words "*and from the instructions*" or "*under the instructions of the court*" are not added.

5. INSTRUCTIONS—*when use of word "material" will not reverse.* Where the word "material" is coupled with the words "to the issues," a question of law is not necessarily stated and a reversal will not necessarily ensue.

6. INSTRUCTIONS—*when refusal of correct will not reverse.* The refusal of a correct instruction will not reverse where its substance is embodied in other instructions given.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in the Branch Appellate Court, at the October term, 1909. Affirmed. Opinion filed January 17, 1912.

MAYER, MEYER, AUSTRIAN & PLATT, for appellant.

TENNEY, COFFEEN, HARDING & SHERMAN, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

This is a suit in assumpsit based on the claim of the plaintiff, appellee here, that he had loaned to the

defendant, appellant here, $1,600 in money. On the trial appellee took the stand and testified in detail to the fact of making the loan; that appellant said he wanted the money because he was in trouble with a girl; that the money was delivered to appellant at the residence of appellee in the form of a certified check of appellee, drawn on the Corn Exchange Bank of Chicago, and made payable to appellee or to currency and endorsed by appellee and dated December 6, 1902; that at the suggestion of appellant that he did not want the transaction known at the stock yards, appellee transferred on that date $2,000 from an account at the National Live Stock Bank at the Stock Yards to his own credit at the Corn Exchange Bank, and drew his check for the amount loaned on and had the same certified by the last named bank. To corroborate his testimony the bookkeeper of the Corn Exchange Bank was called as a witness and testified that the transfer of the $2,000 had been made and a check drawn by him on that bank for $1,600 had been certified by that bank on December 6, 1902, as testified to by appellee.

James H. Robinson also testified to the transfer of the $2,000 account to the Corn Exchange Bank. H. P. Chesley, General Manager of the Mexico Federal Packing Company, testified that in the spring or early summer of 1903 he overheard appellant say to appellee, "I have got that matter all fixed. I will pay you in a couple of days," and that appellee replied, "All right I will expect it." George H. Steenberg, an employe of appellee, testified that in the winter of 1905, he went to appellant and asked him for the $1,600 appellee had loaned him some time ago, and that appellant replied, "That has all been arranged. I saw Mr. Hoxie (appellee) the other day and told him I would pay him in February." Dr. C. C. Singley testified that in December, 1902, he saw appellant in appellee's

residence just inside of the front 'gate talking to appellee.

Appellant testified that he never borrowed $1,600 of appellee; that he never talked with him about borrowing any money; that he never told him he was in trouble with a girl; that he never was in trouble with a girl; that he never received a certified check for $1,600 from appellee; that he never was in appellee's house or even inside his gate; that he never told Steenberg he would repay appellee $1,600 and never had any conversation with him on the subject; that he never told Chesley he was going to pay appellee; that he never was asked by appellee or any one in his behalf to repay any money to him. In fact, he denies seriatim and categorically everything that appellee and his witnesses testified to of which it was claimed he had knowledge. The only evidence offered by appellant besides his own testimony was that of two witnesses who testified that the reputation of appellee for truth was bad.

The jury returned a verdict for $1,973.45 against appellant, on which verdict judgment was entered.

It is not contended that, if appellee is entitled to a judgment at all, the same is excessive. Appellant urges as reasons why this judgment should be reversed that the verdict is contrary to the evidence; that it was the result of passion and prejudice; and that the court erred in giving, modifying and refusing instructions.

The evidence in this case was hopelessly in conflict. It cannot be reconciled. The testimony of appellant stands alone without corroboration, while the testimony of appellee was corroborated by several witnesses in several important details. If the testimony of appellant was true, then the testimony of appellee and all of his witnesses was false. It was for the jury to weigh the evidence and pass upon the credibility of the witnesses. Their verdict shows that they be-

lieved the testimony of appellee and his witnesses and disbelieved that of appellant. They saw the witnesses and heard them testify, and their determination on these questions should not be lightly disturbed. It is only where the finding of the jury, based on conflicting testimony, is so manifestly wrong as to shock the conscience and sense of justice of a reviewing court that it should be set aside by such court. If the testimony of appellee was true, and the jury evidently believed it was true, he was without doubt entitled to the judgment rendered, and we are not prepared to say that, if we were called upon to determine the facts on the record presented, we would not come to the same conclusion as the jury did. It is certainly true that the verdict is not so manifestly wrong as to warrant us in disturbing it on the ground that it is not supported by the evidence.

The claim of appellant that the verdict was the result of passion and prejudice is based on the fact that one witness improperly answered one question by saying, "Who can forget that countenance?" referring to the countenance of appellant, in connection with the further fact asserted by the attorney for appellant in his argument that appellant "was not a very prepossessing looking man and had a distinctively Jewish face," and this we are asked to assume so inflamed the passions of the jury as to cause them to return a verdict against appellant. We are not prepared to take judicial knowledge that there is such a prejudice existing against the Jewish, or more properly speaking, the Hebrew race that a jury will be stampeded by having their attention called to the fact that a partisan before them belongs to that race or even that he is not handsome. This is essentially a cosmopolitan country, and it would be a severe commentary on our prated claim that all men stand equal before our laws, if a court should hold that a man of any na-. tionality, though

"deformed, unfinished, sent before (his) time
Into this breathing world, scarce half made up,
And that so lamely and unfashionable,
That dogs bark at (him),"
could not, on account of these facts, get justice at the
hands of men qualified to be jurors.  Neither can it
be assumed that the references made by the witness
to appellant's countenance in any way accentuated
any of his natural peculiarities.  The jury had seen
him, heard him testify, and knew he was the party
before the occurrence complained of took place and
if it is true that he had a "distinctly Jewish face,"
and not a prepossessing one, the jury were aware of
it before such reference was made, and that reference
could have done no possible harm.

The court gave to the jury two instructions at the
instance of appellee.  The first one told the jury, in
substance, that if they believed *from the evidence* that
appellant had borrowed money of appellee, and had
not paid it back, the plaintiff would be entitled to re-
cover it back in this case with interest at five per cent.
This instruction is criticised because the jury were
not told that if they believed from the evidence and
*"from the instructions"* or *"under the instructions
of the court."*  While it is true that juries are to make
their findings of fact under the instructions of the
court, as to the law applicable to the case, and in com-
ing to a verdict must apply the facts found to be true
to the law as given them by the court, they are the
sole judges of all controverted questions of fact, and
they must find the facts from the evidence and not
from the instructions of the court.  The court has no
right to instruct a jury as to the facts, except in cases
when the facts are so far beyond controversy that the
jury could not in the eyes of the law reasonably find
but one way.  The instruction as given was properly
given.

Counsel for appellant says, "The instruction is also bad because, being directory in form, it does not embrace all the evidence which under the pleadings and evidence is essential to a verdict." Whatever is meant by this objection it is safe to say the instruction is not subject to it. If there is anything essential to a recovery, where the defense is a general denial, beyond the fact that a person has borrowed money and has not paid it back, we are unable to conceive what it is.

The second instruction given at the request of appellee is the stock instruction following:

"The jury are instructed that if you believe from the evidence that any witness had knowingly testified falsely *as to any material fact* then you are at liberty to disregard entirely the testimony of such witnesses except in so far if at all as that testimony is corroborated by other credible testimony, or by facts and circumstances in evidence."

The contention of appellant is that the words "*as to any material fact*" are not equivalent to "*fact material to the issue*," while if the words suggested had been substituted for those used, the instruction would have been correct. We think the two expressions are equivalent and could not have been misunderstood by the jury. Instructions in which the term "material" is used in the same connection without being coupled with the words "to the issue" have many times been approved by the higher courts of this state. Chicago City Ry. Co. v. Shaw, 220 Ill. 532; Hanchett v. Haas, 219 Ill. 546.

It is lastly contended that the court erred in refusing one instruction and in modifying several others. All proper elements in the instruction refused were included almost word for word in one given at the instance of appellee. The material modifications complained of were accomplished by striking out parts of the instructions that were found in other instructions

given, if not in exact words, certainly in equivalent ones.

The practice of counsel in iterating and reiterating the same propositions of law in numerous instructions which they request the court to give is not to be commended. If the charge, as given, contains all the proper elements requested by him, a party cannot complain that they have not been repeated.

No error being found in the record, the judgment is affirmed.

*Judgment affirmed.*